DAVIS, Circuit Judge.
 

 We revisit here the multi-faceted litigation brought in 1967, in the Court of Claims, by the Menominee Tribe of Indians (and some of its members and representatives), as a result of their dissatisfaction with the Menominee Termination Act of 1954, Pub.L. No. 399, ch. 303, 68 Stat. 250, as amended, 25 U.S.C. §§ 891-902 (1970). A sketch of the background of the suit is given in the unanimous
 
 in banc
 
 opinion of the Court of Claims in
 
 Menominee Tribe of Indians v. United States,
 
 221 Ct.Cl. 506, 607 F.2d 1335, 1337-39 (1979),
 
 cert. denied,
 
 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980), which passed upon “the general issue of whether the United States is liable to appellees for breach of trust on account of the enactment and putting into effect of the Termination Act”, 607 F.2d at 1338.
 
 [1]
 
 Before us now is one aspect of the overall suit — the so-called “Deed Restrictions” claim, involving appellees’ challenge to the restrictions on the future use and disposition of the Menominee lands which were established by the termination plan adopted and put into effect under the Termination Act.
 

 Prior to the decision of the Court of Claims in
 
 Menominee Basie
 
 in October 1979, the trial judge of that court had rendered (in March 1979) a recommended decision and findings on this “deed restrictions” aspect of the general case. He ruled that appellees were entitled to receive $29,300,-000. either for breach of trust or for a Fifth Amendment taking. After
 
 Menominee Basic,
 
 appellees moved the Court of Claims to remand this part of the case to the trial judge for reconsideration of his opinion, findings, and conclusion in light of
 
 Menominee Basic.
 
 The court did so in June 1980. Without calling for further briefing or argument by the parties, the trial judge filed (on January 2, 1981) the opinion, findings, and conclusion which are now before us. He again ruled for appellees, in the same amount and on the same alternative bases.
 
 [2]
 
 We reverse and order dismissal of these claims.
 

 I
 

 The Deed Restrictions
 

 The claims presented here by the Tribe concern two land restrictions included in the Menominees’ termination plan (which is reproduced at 26 Fed.Reg. 3727). That plan provided that the deed conveying the reservation land under the Termination Act would contain the following:
 

 THE PARTIES HERETO MUTUALLY COVENANT and agree for the benefit of the State of Wisconsin as follows:
 

 1. That the lands conveyed hereby shall be operated on a sustained yield basis until released therefrom under the laws of Wisconsin or by act of Congress.
 

 2. That for a period of 30 years commencing with the date of this deed the ownership of lands conveyed hereby shall not be transferred, nor shall such lands be encumbered without the prior consent of the State Conservation Commission of Wisconsin and approval of the Governor of Wisconsin unless released from sustained-yield basis under the laws of Wisconsin.
 

 Plaintiffs contend, and the trial judge held, that these two restrictions — which we shall call the “sustained yield provision” and the “30-year restriction” — amounted either to a breach of fiduciary duty by the
 
 *714
 
 United States or to a Fifth Amendment taking without just compensation.
 

 II
 

 Menominee Basic
 

 Menominee Basic
 
 is the matrix of much of our current decision; the court there said expressly that all the specific claims under this overall suit — including the two claims particularly involved here — “will, of course, have to be decided within the limits of our [i.e., the Court of Claims’] jurisdiction” as discussed in that opinion. 607 F.2d at 1345. It is necessary, therefore, to recall the rulings
 
 Menominee Basic
 
 made. First, the court broadly declared that the Court of Claims could not entertain any non-constitutional claims (including a claim for breach of fiduciary trust) that Congress itself violated any duty toward the Tribe by passing and enacting the Termination Act.
 
 [3]
 
 607 F.2d at 1344-45. Second, the court held
 
 likewise
 
 — i.e., that no vindicable claim existed — with respect to any non-constitutional claim that the Interior Department violated its fiduciary duty through its participation in the enactment and implementation of the Termination Act, unless it were shown that the Department breached a provision of that Act or of some other statute.
 
 [4]
 
 607 F.2d at 1345 — 46. Third, the decision squarely held that further proceedings on the specific claims, such as those now before us, could be litigated only “insofar as they do not rest on Congress’ (or the Interior Department’s) alleged breach of fiduciary duty through the passage and enactment of the Termination Act”. 607 F.2d at 1347.
 

 Menominee
 
 Basic
 
 did not treat constitutional claims, and specifically left open all “claims said to arise under the Constitution”. 607 F.2d at 1347.
 

 Ill
 

 Breach of Fiduciary Duty
 

 In his discussion of breach of fiduciary duty, the trial judge wholly disregarded the instructions and holdings of
 
 Menominee Basic.
 
 Directly contrary to the explicit teachings of that decision
 
 (see especially
 
 fn. 3.
 
 supra,
 

 [5]
 

 ),
 
 he extensively considered, and based his ruling on, the Congressional motives in passing and enacting the Termination Act, the alleged inadequate preparation of the Tribe for that termination, the alleged inadequacy of the measures to aid the Tribe to be ready for the termination, and the alleged pressures and decisions in the Tribe to accept termination.
 
 Menominee Basic
 
 pointed out that those were all beyond the court’s jurisdiction and should not be taken into account. When these extraneous considerations are subtracted from the case (as they must be), and when the terms and objectives of the Termination Act are accepted at face value (as they must be), it is apparent that the two deed
 
 *715
 
 restrictions, far from being a vindicable breach of trust, fully accorded with the Act and gave rise to no justiciable claim for breach of trust.
 

 A.
 
 Sustained Yield
 

 The amended Termination Act expressly provided: “The [termination] plan shall contain provision for protection of the forest on a sustained yield basis and for the protection of the water, soil, fish and wildlife. * * * The sustained yield management requirement contained in [the Termination Act] * * * shall not be construed by any court to impose a financial liability on the United States”. 25 U.S.C. § 896 (1964 ed.). Under
 
 Menominee Basie
 
 this sustained yield provision, which Congress specifically enacted in the Termination Act, could not be challenged in the Court of Claims as a breach of fiduciary duty. The sustained yield provision demanded by the Termination Act was in fact included in the deed to the Menominees of the Reservation land, dated April 26, 1961, a deed issued pursuant to that Act. The Interior Department, together with the Tribe, simply implemented the explicit requirement of the Termination Act. For that, no liability for breach of fiduciary duty can possibly result — as
 
 Menominee Basic
 
 held.
 

 Some argument is made that Interior improperly modified the statutory requirement by providing that the sustained yield mandate could be released either by the laws of Wisconsin or by Congressional act. Because appellees’ claim is that the imposition of the sustained yield requirement reduced the value of the Menominee land, it is hard to see how they could be injured by inclusion of mechanisms for earlier release of that allegedly detrimental requirement.
 
 [6]
 
 In any event, those “release” provisions do not violate the purpose or terms of the Termination Act — do not take this case outside of the rulings of
 
 Menominee Basic.
 
 The statute specifically called upon Interior to see that the termination plan “conforms to applicable Federal and State law”. 25 U.S.C. § 896,
 
 supra.
 
 That requirement supports the reference, in the termination plan as well as in the deed, to both federal and Wisconsin law on release of the sustained yield requirement.
 

 B.
 
 30-Year Restriction
 

 Though not mandated by the Termination Act, the joint acceptance (in the plan and deed) of the 30-year restraint on alienation is likewise fully consonant with the Act, and therefore not chargeable as a breach of trust.
 
 [7]
 
 The 30-year restraint was an effort to enforce the statutory mandate of sustained yield management. The termination plan so characterized it.
 
 [8]
 
 Moreover, this restriction formed part of an arrangement under which the Tribe received a state tax advantage for maintaining the forest (or higher beneficial uses) for a long period. This could obviously be deemed important for the economic success of the post-termination Tribe, which was to be obtained (in part) by the sustained yield mandate.
 
 [9]
 

 
 *716
 
 IV
 

 Fifth Amendment Taking
 

 The court below indisputedly had jurisdiction to pass upon appellees’ claims that the deed restrictions amounted to a Fifth Amendment taking without just compensation.
 
 (Menominee Basie
 
 did not consider that aspect of the overall case or of this segment.
 
 See
 
 607 F.2d at 1339 — 40.) We believe, however, that the trial judge erred in his alternative ruling that imposition of these provisions did constitute such takings. We hold, instead, that they were permissible regulations and that there is no proper claim for just compensation.
 
 [10]
 

 A.
 
 Sustained Yield
 

 Unlike some other Indian termination legislation, the Menominee Termination Act did not provide for, or contemplate, the general sale or transfer of the Menominee land to third parties; nor was the United States to assume ownership of the land.
 
 Cf. Klamath and Modoc Tribes v. United States,
 
 193 Ct.Cl. 670, 436 F.2d 1008,
 
 cert. denied,
 
 404 U.S. 950, 92 S.Ct. 271, 30 L.Ed.2d 267 (1971). The Menominee Tribe was expected to continue its own ownership. In that situation the sustained yield provision was simply the continuation of a regulatory requirement which had long existed for the Menominee forest and which Congress considered important for the future economic health of the Tribe. This regulation was imposed under the Congress’ plenary authority to regulate Indian-owned forests. The Tribe never had unfettered ownership of the land; nor was that kind of ownership given to them in the Termination Act; accordingly, no property right was taken from the Indians when Congress required continued management on the sustained yield basis.
 

 In
 
 Menominee Tribe v. United States,
 
 117 Ct.Cl. 442, 499, 509, 91 F.Supp. 917 (1950), the Court of Claims held that the Act of March 28, 1908, 35 Stat. 51, required the Government to manage the Tribe’s forest on what was, in effect, a sustained yield system. That requirement of the 1908 Act continued until termination in April 1961. Imposition of that requirement, one often used for Indian forests, was obviously within the Congressional authority over Indians.
 
 See United States v. Mitchell,
 
 - U.S. -, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). In the course of assessing the original Termination Act, Congress amended it to include the same sustained yield directive after termination, for the very purpose of continuing the benefits of that policy to the Indians.
 
 [11]
 
 Because of its power over disposition of Indian property, Congress had the right so to condition its transfer of the land to the Tribe.
 
 Tiger v. Western Investment Co.,
 
 221 U.S. 286, 315-16, 31 S.Ct. 578, 586-87, 55 L.Ed. 738 (1911). This refusal to grant unencumbered fee simple title to the Tribe was not the deprivation of any existing property right entailing Fifth Amendment compensation.
 
 [12]
 

 
 *717
 
 The addition to the plan and the deed of provision for release of the sustained yield requirement by federal or Wisconsin law does not push the sustained yield directive into the compensatory category. As we have observed,
 
 supra,
 
 fn. 6 and text at fn. 6, those “release” provisions had no compulsory or injurious effect on the Menominees’ use of the land; they did not take anything away from the Indians which the Tribe previously possessed. For the same reasons, those additions did not convey any of plaintiffs’ property to Wisconsin simply because Wisconsin law could release the Me-nominees, if the Indians wished to accept that release, from the sustained yield mandate. Neither the Termination Act nor the termination plan gave broader authority to the state.
 
 [13]
 

 B.
 
 30-Year Restriction
 

 The same principles demonstrate that the 30-year restriction falls short of being a Fifth Amendment taking. The United States could lawfully condition the transfer of the land to the Tribe on the latter’s agreement not to alienate the land for a period of thirty years.
 
 [14]
 
 Restrictions on alienation are common with respect to Indian lands.
 
 See, e.g., United States
 
 v.
 
 Mitchell,
 
 445 U.S. 535, 540-41, 100 S.Ct. 1349, 1352-53, 63 L.Ed.2d 607 (1980);
 
 Tiger v. Western Investment Co.,
 
 221 U.S. 286, 315-16,31 S.Ct. 578, 586-87, 55 L.Ed. 738 (1911). But even if we assume, contrary to our belief, that this restraint was invalid, that conclusion would not equate to the finding of a constitutional taking. The core principle is that there can be no such taking where, as here, no pre-existing property right is taken from the owner by the Government. Because there was no taking the plaintiffs could not obtain compensation under the Fifth Amendment for the allegedly unlawful imposition.
 

 V
 

 Mootness
 

 Appellant insists that the case has become moot as a result of the Menominee Restoration Act of 1973,25 U.S.C. §§ 903 et
 
 seq.,
 
 which returned the Menominee forest to federal trust status some 12 years after the termination of federal supervision and the imposition of the two deed restrictions. We reject the argument of mootness because, if appellees prevailed on any of their claims, they might prove to be entitled to some monetary recovery (even though materially less than the trial judge awarded). The case cannot as yet be called entirely moot.
 

 VI
 

 Conclusion
 

 On these grounds, we hold that the court below was without jurisdiction of large portions of this case, and that (as to the claims within that court’s jurisdiction) appellees
 
 *718
 
 have not shown any sustainable claim.
 
 [15]
 
 The decision below must be reversed with directions to dismiss the complaint in this Docket No. 134-67-A.
 
 [16]
 

 REVERSED.
 

 [1]
 

 . This decision is familiarly known as
 
 Menominee Basic
 
 because it dealt with the plaintiffs’ basic claim, and was so denominated by the Court of Claims.
 
 See
 
 607 F.2d at 1335. We shall refer to that opinion and decision by that shortened description.
 

 [2]
 

 . While the Court of Claims still existed, the Government filed a petition for review by the Article III bench of that court, which did not decide it. Pursuant to an October 4,1982 order of this court, the Claims Court entered judgment on October 8, 1982, corresponding to the decision recommended in this case by the trial judge. The case was transferred on October 1, 1982, to this court under section 403 of the Federal Courts Improvement Act of 1982, 96 Stat. 57-8 (April 2, 1982).
 

 [3]
 

 . The opinion said:
 

 The jurisdictional barrier against our appraisal of Congress’s action in enacting the Termination Act covers (a) any evaluation of Congressional motives or the interests Congress was pursuing; (b) any alleged failure of Congress to prepare the Menominees for termination, to make a full and fair disclosure to them of all pertinent facts, to allow further time before termination was effected, to give greater assistance to the Indians in the termination process, to reconsider the policy of termination, to adopt modified legislation, or to determine before final amendment of the Act whether the Tribe and its members were ready to assume management and control of their property and affairs; and (c) any alleged duress or pressure by Congress or its members on the Menominees to obtain their consent to termination.
 

 [4]
 

 . In that connection the court declared that Interior was required by the Termination Act to provide reasonable assistance in the formulation of the termination plan only to the extent requested by officials of the Tribe. The court also held that the Secretary of Interior could not disapprove the termination plan “if he thought the Menominees unprepared for termination, or that he could delay termination on that ground”. 607 F.2d at 1346, n. 24.
 

 [5]
 

 . With respect to the Interior Department,
 
 Menominee Basic
 
 also ruled beyond the Court of Claims’ jurisdiction any liability “because the Interior Department did not itself undertake to try to stop Congress or to advise or persuade it differently or to do more than Congress required of it in order to prepare the Menominees for the termination Congress had ordered”. 607 F.2d at 1345.
 

 [6]
 

 . Nothing in the sustained yield provision of the deed
 
 compelled
 
 the Menominees to end the sustained yield program if Wisconsin or the Federal Government released them from the requirement. The choice remained with the Indians to continue the program if they wished to do so.
 

 [7]
 

 .
 
 Menominee Basic
 
 held that the United States could not be liable for any action of the Interior Department, in the implementation of the Termination Act, unless that action “violated the Constitution or some outstanding directive of Congress”. 607 F.2d at 1345.
 

 [8]
 

 . The plan said:
 

 To better insure the welfare of the Menominee people * * * deed covenants were agreed upon which will enforce the maintenance of the sustained yield principles in the care and preservation of the forest. It is believed that within thirty years sustained yield will have served the ultimate benefit of the Menominee people as a tribe, at the end of which time the owners can reassess their condition.
 

 [9]
 

 . Appellees argue that Wisconsin could exert extensive powers over the Menominee land as a result of the state’s power to vary taxation of the land unless the Tribe agreed to the state’s position on management of the forest and restrictions on alienation. Even if we assume the correctness of these assertions, they would not amount to a justiciable claim for breach of fiduciary duty by the
 
 Federal
 
 Government First, insofar as Wisconsin was permitted to
 
 *716
 
 exert such power by virtue of the termination of federal control, that followed from the choice of Congress to enact the Termination Act — a matter
 
 Menominee Basic
 
 held outside of the jurisdiction of the Court of Claims. Second, potential misuse or improper use by Wisconsin of its authority after termination cannot be charged to the Federal Government. The deed restrictions themselves — the only matters with which this suit is concerned — do not contemplate any such state power. The reference in the deed to the two deed restrictions being “for the benefit of the State of Wisconsin”, supra, merely gave that State the power to enforce the restrictions if they were violated.
 

 [10]
 

 . We by-pass, without reaching, appellant’s argument that the Menominees fully consented and agreed to these restrictions and are therefore barred from urging them as a taking.
 

 [11]
 

 . It appears from the legislative history that the Menominee council approved and its counsel supported the amendment.
 

 [12]
 

 . Appellees mistakenly assume that Congress first granted full, unencumbered title to them and then imposed the sustained yield requirement. The true fact is that Congress restricted the transfer when it first made the transfer in the Termination Act.
 

 That Congress did not, and did not intend to, grant unencumbered fee title to the Indians is shown, among other things, by the specific provision in the Termination Act (25 U.S.C. § 896 (1964 ed.)) that the sustained yield management requirement “shall not be construed
 
 *717
 
 by any court to impose a financial liability on the United States”. Congress recognized by that proviso that it was not granting the Me-nominees the plenary title that would be a necessary prerequisite for a taking. The trial judge thought that this proviso was limited to claims of forest mismanagement following termination but nothing in the broad text or the legislative history indicates that the proviso’s sole objective was directed at the post-termination period when the Federal Government would no longer have control over the forest.
 

 [13]
 

 . Appellees are wholly wrong in saying that the United States gave Menominee property to Wisconsin. We have already touched, in our discussion of the claim for breach of trust (see fn. 9,
 
 supra),
 
 on the Tribe’s complaint that termination enabled Wisconsin, through its powers of taxation, to have great power over the Menominee land. Here, too, those assertions, if true, would not found a claim against the United States — this time for a constitutional taking. The United States would not take the Indians’ property by terminating federal control of and supervision over the land, and forcing the Menominees to live on the same basis as other United States citizens. Wisconsin might be liable for improper action
 
 it
 
 took, but not the Federal Government.
 

 [14]
 

 . In order to find a Fifth Amendment taking, we have to assume that Congress authorized the Interior Department to include the 30-year restriction in the transfer deed. If the Department’s agreement to this restriction was
 
 ultra vires,
 
 there could not possibly be a Fifth Amendment taking which calls for initial authorization by Congress.
 

 [15]
 

 . We hold, in particular, that appellees have not proved any violation by Interior of the Termination Act in the respects left open by
 
 Menominee Basic,
 
 or of any other federal statutes.
 

 [16]
 

 . In view of our holdings in this opinion, it is unnecessary to consider the detailed exceptions the appellant has made to the various findings of fact by the trial judge. Those findings all fall with our direction to dismiss the complaint.