The MENOMINEE TRIBE OF INDIANS, et al., Appellants and Cross-Appellees,

v.

The UNITED STATES, Appellee and Cross-Appellant.

Appeal No. 134–67B.

United States Court of Appeals, Federal Circuit.

Jan. 24, 1984.

---

Jerry C. Straus, Washington, D.C., argued for appellants; with him on brief, were Frances L. Horn, Philip A. Nacke, Angelo A. Iadarola and Robin A. Friedman, Washington, D.C.

Glen R. Goodsell, Washington, D.C., argued for appellee; with him on brief, was James W. Moorman, Asst. Atty. Gen., Washington, D.C.

Before RICH, DAVIS, BENNETT, MILLER and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

I

This is another segment of the many-phased suit brought by the Menominees against the Federal Government in 1967, in the Court of Claims, to recover for a variety of alleged violations of their rights. Recently we issued our opinion in the so-called "Deed Restrictions" claim (*Menominee Tribe of Indians v. United States,* Fed. Cir.1983), 726 F.2d 712. That opinion recalls the general background and nature of this massive litigation. Today we consider the separate "Forest Management" claim in which, after a trial, the trial judge awarded the plaintiffs $7,195,915 for defendant's alleged mismanagement of the Indians' forest resources.[1] Both sides appeal, the plaintiffs asserting that the award was insufficient and the Government arguing, on various grounds, that no award could or should have been made (or, if any award was owing, it should have been in a lesser sum).

The trial judge's opinion, findings of fact, and recommended conclusion were issued on April 4, 1980, while the Court of Claims still

existed. Both sides filed exceptions and briefs which the Article III judges of the Court of Claims were unable to consider before that court expired on September 30, 1982. The case is now before us for decision.[2] We reverse and direct dismissal of the complaint.

II

*Background*

This particular case has some, but limited, connection with the Menominee Termination Act of 1954, as amended, 25 U.S.C. §§ 891–902 (1970),[3] which was the main focus of the Court of Claims' decision in *Menominee Tribe of Indians v. United States,* 607 F.2d 1335, 221 Ct.Cl. 506 (1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980) ("*Menominee Basic*") and of our decision in *Menominee Tribe of Indians v. United States,* Fed. Cir.1983, 726 F.2d 712 ("*Menominee Deed Restrictions*"). The present claim is a charge of governmental mismanagement of the Menominee forest for the 10-year period beginning July 10, 1951, with an alleged impact on the forest lasting into the post-termination date of the trial below. Plaintiffs' claim for redress of alleged mismanagement begins with the date of the settlement (July 10, 1951) of prior Menominee litigation concerning the forest management (*Menominee Tribe of Indians v. United States,* 118 Ct.Cl. 290 (1951)). The present suit was begun on April 25, 1967.

The principal charge of mismanagement in the period 1951 to 1961 is that the Federal Government, as fiduciary manager of the

---

1. Of this amount, $4,317,500 was for defendant's mismanagement before April 29, 1961 (*i.e.,* prior to termination of federal control and supervision over the Menominees) and $2,878,-415 was for damages (resulting from such past mismanagement) said to continue into the post-termination period (*i.e.,* after April 29, 1961).

2. Pursuant to an October 4, 1982 order of this court, the Claims Court entered judgment on October 8, 1982, corresponding to the decision recommended in this case by the trial judge. The case had been transferred on October 1,

1982, to this court under section 403 of the Federal Courts Improvement Act of 1982, 96 Stat. 57–8 (April 2, 1982).

3. Termination of federal control and supervision was effected under the Termination Act on April 30, 1961. The Menominee Restoration Act of 1973, 25 U.S.C. §§ 903 *et seq.,* returned the Menominee forest to federal trust status some 12 years after termination of federal control and supervision.

Menominee forest, obtained too low harvest income because it adhered to an unreasonably low annual harvest limitation; this annual limitation had been first set by the Congress in 1890 and continued thereafter. The contention was that the Interior Department, though it knew or should have discovered that the limitation was deleteriously low in 1951–1961, failed to seek amendment of the statutory harvest limitation from the Congress, which could not be aware (it is said) of the changing conditions necessitating such an amendment unless so informed by government management personnel. The trial judge accepted this argument of breach of fiduciary duty.[4]

Defendant presents a number of reasons why the decision below should be completely reversed and the complaint dismissed.[5] We need consider only the defenses of limitations and of lack of jurisdiction to consider actions connected with the Termination Act.

### III

#### Statute of Limitations

■ Because this suit was commenced on April 25, 1967, the six-year statute of limitations applicable to the Court of Claims would ordinarily bar plaintiffs' claim to the extent it "first accrued" prior to April 25, 1961. 28 U.S.C. § 2501. Termination of federal control and supervision, under the Termination Act, was effective April 30, 1961. 25 U.S.C. § 896; 26 Fed.Reg. 3726. On April 26, 1961, the Secretary of the Interior, pursuant to 25 U.S.C. § 897, transferred the Menominee forest by deed to the plaintiffs (or their representatives). At most, therefore, there were only one to five days in which government action with respect to the management of the forest was within the six-year period for an allowable suit.

When did plaintiffs' claim of forest mismanagement "first accrue"? The trial judge measured plaintiffs' damages from January 1, 1952; he found that from the data available at that time defendant knew or should have known that the statutory harvest limitation "was the principal and controlling cause of substantial underproductivity in the Menominee Forest", and that it was a breach of trust for the Government to fail to supplement and refine the 1952 data "expeditiously". Accordingly, there is no doubt, under the unchallenged findings made below, that all of the claim of breach of trust resulting in pretermination damages actually related to assertedly improper government activities which began and continued prior to the allowable six-year period (*i.e.,* prior to April 25, 1961). The result is that, unless the running of the six-year statute was tolled during the pre-termination period, plaintiffs' claim is barred, at least as to all pre-termination damages.[6]

■ The trial judge held, and the Tribe contends, that the otherwise applicable six-year limitations period was tolled for two reasons: first, the Tribe was excusably ignorant of the facts underlying its claim until it began itself to manage the forest after termination in April 1961; and, second, limitations was tolled during the whole pre-termination period because of the then-existing trust relationship between the Tribe (including its forest) and the United States. We consider each argument in turn, accepting neither.

A. The contention of tolling because of "blameless ignorance" founders on improper factual findings together with incorrect legal rulings. It is settled, for one thing, that 28 U.S.C. § 2501 is not tolled by the

---

4. The trial judge rejected plaintiffs' alternative claim of a Fifth Amendment taking by virtue of the alleged mismanagement; plaintiffs have not appealed that aspect of their over-all claim.

5. These include: (a) lack of any subject matter jurisdiction in the Court of Claims or Claims Court over this entire claim of breach of fiduciary duty; (b) there was in fact no breach of

fiduciary duty; (c) no jurisdiction over the claim for post-termination damages; and (d) bar by the six-year statute of limitations.

6. As indicated in Part I, *supra,* fn. 1, pre-termination damages account for almost two-thirds of the total recovery awarded below.

Indians' ignorance of their *legal* rights. *Affiliated Ute Citizens of the State of Utah v. United States,* 199 Ct.Cl. 1004 (1972); *Capoeman v. United States,* 440 F.2d 1002, 194 Ct.Cl. 664 (1971).[7] As to the facts,[8] there is here plainly no such *concealment* (*e.g.,* imposition of secrecy) by the defendant as would admittedly toll limitations. *See Spevack v. United States,* 390 F.2d 977, 981, 182 Ct.Cl. 884 (1968); *Japanese War Notes Claimants Ass'n. v. United States,* 373 F.2d 356, 358–59, 178 Ct.Cl. 630, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Nor were the facts of potential injury from Interior's conduct "inherently unknowable" at the ordinary accrual date in 1952. Plaintiffs charge Interior's officials with that very knowledge which was also available to the Indians if they sought advice. The overwhelming weight of the evidence shows that the Indians were not so invincibly ignorant that they did not even know enough to make inquiry or seek advice. In 1956, acting on a resolution of the Menominee Council, Congress made one increase in the statutory harvest limitation (said by the Indians to be insufficient). The Tribe had successfully carried on the earlier suit (on another basis) against the United States for forest mismanagement and entered into a substantial settlement in 1951. *Menominee Tribe of Indians v. United States,* 91 F.Supp. 917, 117 Ct.Cl. 442 (1950); 118 Ct.Cl. 290 (1951); 119 Ct.Cl. 832 (1951). At least from 1954 onward, the Indians and their attorneys participated actively in the Congressional consideration of termination and in the preparation of the termination plan. Without doubt the Indians were capable enough to seek advice, launch an inquiry, and discover through their agents the facts underlying their current claim. In short, "[t]he facts were all available", and the running of limitations would not be tolled as if they were "unknowable". *See Affiliated Ute Citizens v. United States, supra,* 199 Ct.Cl. 1004 (1972).

B. We assume, without deciding, that there was a trust relationship between Interior and the Menominees with respect to the management of the latter's forest. *See United States v. Mitchell,* —— U.S. ——, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Short v. United States,* 719 F.2d 1133, 1134–37 (Fed.Cir.1983). Even so, limitations was not tolled, simply because of the existence of that trust relationship, until termination in April 1961.

The Court of Claims explicitly refused in comparable cases to toll the six-year limitation period of 28 U.S.C. § 2501 despite the fact that those Indian plaintiffs or the then-involved Indian property were under trust or in incompetent status. In *Capoeman v. United States,* 440 F.2d 1002 (Ct.Cl.1971), an "incompetent" Indian sued "for recovery of certain charges made by the Government incident to the sale by it, as trustee, of the timber standing in plaintiff's trust allotment"; the disputed charges had been made in 1946 and suit was not brought until 1969 but the plaintiff argued that the six-year period was tolled by the rule (strongly argued in the present case) that limitations does not run against a beneficiary until the trust is terminated or repudiated. The court specifically ruled that that principle did not apply to Indians, like the Menominees here, who were suing on claims that the Government has never acknowledged on the merits. 440 F.2d at 1003. The opinion likewise rejected the related contention that 28 U.S.C. § 2501 does not bar a restricted Indian's claim against the United States for misappropriation of his trust funds. 440 F.2d at 1005–08. In the face of the unqualified terms of the limitations

---

**7.** There is double reason for applying that rule in this case. *Menominee Basic, supra,* 607 F.2d at 1346, pointed out that in the termination process (beginning prior to 1954) the Tribe was represented by "skilled attorneys".

**8.** The trial court's factual findings on the problem of "blameless ignorance" were very summary and inordinately sketchy. The formal

findings simply state what plaintiffs claimed without adopting that position. The opinion says no more than that "the Indians were not skilled in the technical science of forestry and no efforts were made by defendant to prepare them adequately to take over management of their property".

statute, and of the existence of other legislation modifying or waiving limitations for Indians, the court refused to read such an implied exception into the limitations provision of the Tucker Act (*i.e.,* 28 U.S.C. § 2501). *Capoeman* was followed in the summary order in *Caldwell v. United States,* 197 Ct.Cl. 1063 (1972). *Andrade v. United States,* 485 F.2d 660, 661, 664, 202 Ct.Cl. 988 (1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974), applied the same principle that an Indian trust cannot toll the statute of limitations (in the absence of concealment or unknowable facts). Finally, *Fort Mojave Tribe of Indians v. United States,* 210 Ct.Cl. 727, 728 (1976), another trust case, invoked the same rule, saying that "[t]he statute of limitations applies to Indians the same as to anyone else" (except, perhaps, in the presence of an *express* trust, which likewise does not exist here). These rulings of the Court of Claims, binding on the trial judge and on us, clearly demonstrate that the trial judge erred in holding that the Tribe's claim for pre-termination damages was free of the bar of limitations (imposed by 28 U.S.C. § 2501) until the end of trust status in April 1961.

The sum of it is that the claim for pre-termination damages is entirely barred by limitations.

## IV

### *1961 Management Plan*

■ The trial judge held, and the Tribe maintains, that the "injuries to the Menominee Forest were perpetuated into the post-termination period by the 1961 Management Plan"[9] and that the Government is therefore liable for post-termination damages from April 29, 1961 through November 1, 1971 (a date shortly before the trial below). The 1961 Management Plan was drawn up in December 1960 but did not become fully effective until termination at the end of April 1961. As we have pointed out (Part III, *supra* ), the six-year statute of limitations would not bar a claim arising in the last few days of April 1961. For that reason, it is said that the 1961 Management Plan, which became effective on April 30th, falls within the non-barred period. Defendant argues, on the other hand, that this portion of the plaintiffs' claim arose when the plan was earlier proposed, adopted, and made known in late 1960 and early 1961 (all within the barred period prior to formal termination). We bypass this dispute as to timeliness because we are satisfied that in any event the Court of Claims and the Claims Court had and have no jurisdiction over the Management Plan which was an integral part of the termination ordered by Congress in the Termination Act. This conclusion follows directly from the holding by the *in banc* Court of Claims in *Menominee Basic, supra,* and also from the recent holding of this court in the *Menominee Deed Restrictions* case, *supra,* that matters connected with and authorized by the Termination Act are all beyond the jurisdiction of the Court of Claims and the Claims Court. We now spell out in more detail the reasons for that conclusion.

The Termination Act provided, in relevant part (Section 7), that the Tribe was to formulate and submit to the Secretary of the Interior "a plan for the future control of the tribal property and service functions now conducted by or under the supervision of the United States including [specifying certain matters] and all other matters involved in the withdrawal of federal supervision". That the Menominee forest was directly involved in the termination plan was further shown by the following provision: "The termination plan shall contain provision for protection of the forest on a sustained yield basis * * *." 25 U.S.C. § 896 (1964 ed.). The trial judge expressly found that the 1961 Management Plan "was the

---

9. This 1961 Management Plan is said by the Tribe to have "locked" the Menominees into a forest plan which seriously reduced the Indians' timber cut after termination and continued to call for unnecessary and improper undercutting of the forest. The plan was originally proposed by a government forester; the Tribe says that it had no participation in drawing up the final plan while the Government insists that the Indians fully participated. There is strong evidence supporting the Government's position.

initial concrete implementation of the sustained yield requirement" of the Termination Act and that the 1961 Management Plan was drawn up "in preparation for termination of federal supervision and protection".[10] Adverting in part to the 1961 Management Plan which was included in the termination plan, the final termination plan declared (26 Fed.Reg. 3727):

> The Plan formulated and submitted by the Tribe is designed to meet the requirements of law by * * * providing a sound economic base through regulation and use of communal tribal property and operation of the Menominee Forest on a sustained yield basis.

It follows that the preparation, content and impact of the 1961 Management Plan must be judicially treated as an integral part of the Termination Plan. As part of that Plan (and authorized by the Termination Act), the forest management plan cannot be assessed or evaluated by the Court of Claims or the Claims Court (or by us) and cannot be considered within current judicial jurisdiction to vindicate a claim for money damages against the United States for breach of trust. *Menominee Basic* precluded all court consideration of the impact of the Termination Act itself, or of Interior's actions taken pursuant to (and not in contravention of) that Act. 607 F.2d at 1344, 1344–47. *Menominee Deed Restrictions* reaffirmed that principle and specifically applied it to particular provisions of the termination plan which were contemplated and authorized by the Termination Act. Those rulings fully govern the current case and preclude the trial judge from doing what he did, *i.e.,* evaluating the drawing up and the effect of the 1961 Management Plan on the Menominee forest. The alleged deficiencies of the 1961 Management Plan fall into precisely the same class as the sustained yield and 30-year restriction requirements dealt with in *Menominee Deed Restrictions, supra.* Even though the portion of the Tribe's claim that rests on the 1961 Management Plan may possibly not be barred

by limitations, that segment of the claim is nevertheless entirely outside the jurisdiction of the Court of Claims and the court below.

## V

### *Conclusion*

Thus, plaintiffs' entire "Forest Management" claim, now before us in this suit, is barred from consideration (for the reasons given in Parts III and IV, *supra*) and should have been dismissed. The complaint must now be dismissed, and the trial judge is so directed.[11]

We are constrained to add that this is the third time that this trial judge has been reversed in these *Menominee* cases, reversals mainly compelled by the trial judge's direct disregard of controlling precedents binding on him. We expect that in the remaining segments of this general *Menominee* litigation the trial judge, if he continues with the *Menominee* cases, will not repeat that type of error. If he feels unable to conform to the controlling decisions, he should remove himself from the litigation.

REVERSED.

---

10. The Tribe's reply brief states that the 1961 Plan was "prepared by defendant's forester pursuant to Section 7 of the Termination Act".

11. The Tribe's cross-appeal on damages necessarily fails, and it is likewise unnecessary to consider the trial judge's findings of fact which must be vacated.