Madeline SANKEY, et. al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90–93L.

United States Claims Court.

April 9, 1991.

Jeffrey P. Southwick, Oklahoma City, Okl., for plaintiffs.

Thornton Withers Field, Washington, D.C., with whom was Asst. Atty. Gen. Richard B. Stewart, for defendant.

### ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss or in the alternative, for summary judgment. Because the motion incorporated other documents, it will be considered one for summary judgment. Summary judgment is appropriate only when there are no material issues of fact so that the moving party is entitled to judgment as a matter of law. RUSCC 56(c); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir. 1987); *Hendricks v. United States*, 10 Cl.Ct. 703, 706 (1986). For purposes of this

motion, the court will view all evidence and inferences in the light most favorable to the plaintiff. *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed. Cir.1983).

### FACTS

Plaintiffs, and their predecessors-in-interest, are Cheyenne and Arapaho allottees whose lands are held in trust by the United States government. In May of 1957, plaintiffs' predecessors in interest executed three oil and gas leases. Two of these leases were with the Sun Oil Company (now Oryx Energy Company), and one was with Conoco, Inc. As approved by the Secretary of the Interior, each lease reserved a one-eighth royalty to the lessor, his successors, or assigns, and provided that royalties might be calculated in the following manner:

"Value" may, in the discretion of the Secretary, be calculated on basis of the highest price paid or offered (whether calculated on basis of short or actual volume) at time of production for the major portion of the oil ... and gas ... produced and sold from the field where leased lands are situated.

The Bureau of Indian Affairs (BIA) did not provide individual Indian lessors copies of the leases automatically. However, BIA made available to each interest owner a copy of the lease to review and sign prior to its execution. BIA also advised interest owners of the terms and obligations of the leases.

On March 20, 1962, Superior Oil Co. and Oklahoma Natural Gas Co. entered into a contract providing for the intrastate sale of plaintiffs' gas. The contract provided for varying prices culminating in a price of 20.1 cents per thousand cubic feet (Mcf) of gas. Superior Oil entered into a second sales contract with Sun Oil Co. on May 3, 1977. The pricing provisions in this contract established prices of $1.02, $1.07, and $1.12 per Mcf for the contract's first three years. From the fourth year onward, the price was to increase by 50% of any increase in the purchaser's base resale price over the preceding year. Plaintiffs have received royalties based on these contract prices continuously since 1962.

Defendant contends that Notices promulgated, and the law, provide that royalties be based upon the contract price, and points for support to Notice to Lessees and Operators Number 5 (NTL–5), 42 FR 22610, published in 1975. NTL–5 deals with gas from wells operating prior to June 1, 1977, such as plaintiffs', and sold pursuant to arms-length contracts in the intrastate market. The provision of NTL–5 governing royalty computation provides that the base value for royalty purposes is to be the higher of:

a. The price received by the lessee or operator in accordance with the provisions of the applicable sales contract, or

b. A minimum value of not less than 18 cents per Mcf.

Defendant also relies upon the Natural Gas Policy Act of 1978 (NGPA). Pub.L. 95–621, 92 Stat. 3352, 15 U.S.C. §§ 3301 *et seq.* The NGPA provides that the price of gas sold pursuant to existing contracts, not committed or dedicated to interstate commerce, is controlled by section 105. Section 105 sets the maximum lawful price as the lower of the existing contract price, or the maximum lawful price established under the NGPA's section 102.

Plaintiffs alleged that defendant breached fiduciary duties arising out of the trust relationship between the parties. Specifically, that defendant failed to ensure that the lessees calculated royalties by performance of major portion analysis. Plaintiffs also alleged that defendant failed to exercise contract provisions permitting plaintiffs to collect royalties in kind when doing so would have been economically beneficial, and that the duty arose from defendant having "stepped into plaintiffs' shoes" throughout the leasing process.

Plaintiffs filed their complaint and sought certification as a class on January 31, 1990. This court denied class action certification on February 21, 1990. On August 21, 1990 defendant filed its motion to

dismiss, or in the alternative for summary judgement, now before the court.

## DISCUSSION

### I. *The Statute of Limitations*

A. This Court Must Adhere Strictly To The Statute Of Limitations Which Fundamentally Affects Its Jurisdiction.

▉ This court long has recognized that it must observe strictly the conditions upon which the government consents to be sued to avoid the prosecution of stale claims which might prejudice defendant. *Cochran v. United States*, 19 Cl.Ct. 455, 457 (1990) (quoting *Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974)). The relevant statute of limitations, 28 U.S.C. § 2501, reads "every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." This statute, which is determinative of the court's jurisdiction, bars a claim filed in an untimely fashion. The court, therefore, must scrutinize plaintiffs' claims in this light. *Cochran*, 19 Cl.Ct. at 457.

▉ When ruling on a motion to dismiss based on the statute of limitations, the court must focus on the issue of "first accrual," *i.e*, that point at which events transpired "entitling the claimant to bring suit alleging the breach." *Nager Elec. Co. v. United States*, 368 F.2d 847, 851, 177 Ct.Cl. 234 (1966). A claim accrues, and the statute of limitations begins to run, when the underlying facts of a claim become known or knowable to plaintiff. *Menominee Tribe of Indians v. United States*, 726 F.2d 718, 720–21 (Fed.Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984).

Defendant asserted that the statute of limitations barred plaintiffs' claims because more than six years ago they knew, or should have known, that lessees were not valuing royalties on the basis of major portion analysis, and that defendant never exercised the royalty in kind provisions. Defendant further contended that the lease provisions at issue did not impose affirmative duties on the Secretary of the Interior and therefore, plaintiffs failed to assert claims upon which relief could be granted.

B. Plaintiffs' Claim For Breach Of Fiduciary Duty Based On Defendant's Failure To Require Major Portion Analysis Is Barred By Operation Of The Statute Of Limitations.

▉ Plaintiffs argued that their claims are not barred by the statute of limitations because they never received copies of the leases executed by their predecessors in interest, and so did not possess notice sufficient to commence the running of the statute of limitations. However, Indians' ignorance of their legal rights does not toll 28 U.S.C. § 2501. *Menominee Tribe*, 726 F.2d at 721.

In response to plaintiffs' argument, defendant submitted the declaration of L.W. Collier, Jr., Anadarko Area Director for the BIA. Mr. Collier stated that under BIA policy, effective both in 1957 and the present, every Indian lessor is to review a copy of the lease prior to its execution. There is no direct evidence of whether or not this policy was followed when plaintiffs' predecessors in interest signed their leases, but government officials are presumed to carry out their duties in good faith, and it takes "well-nigh irrefragable proof to overcome this presumption." *Knotts v. United States*, 121 F.Supp. 630, 128 Ct.Cl. 489, 492 (1954); *Dufau v. United States*, 22 Cl.Ct. 156, 164 (1990). Plaintiffs submitted no proof that BIA officials failed to adhere to the policy.

The BIA also has counselors and staff members available to answer any questions the lessor may have regarding a lease. Upon request, the BIA will furnish the original lessor, or successors-in-interest, with a copy of the lease. Allottees may dispose of their lands in wills approved of by the Secretary of the Interior, *see* 25 U.S.C. § 373, but most fail to execute wills. Thus, when the holder of an allotment dies intestate, the problem of fractionalized ownership arises. The interest of the de-

ceased allottee then descends according to the law of intestate succession of the particular state where the allotment is located. 25 U.S.C. § 348. This system of descent, operating over the course of several generations, may result in as many as a hundred allottees sharing in the beneficial interest of a single allotment.

The fact that plaintiffs may not have been in direct possession of copies of the leases does not relieve them from being charged with knowledge of the lease provisions. Under BIA policy, plaintiffs easily could have obtained copies of the leases executed by their predecessors in interest. Plaintiffs offer no evidence that the original lessors did not review the leases prior to execution, and once plaintiffs began to receive royalty payments a simple phone call and/or visit to BIA would have secured answers to any questions that might have arisen. There plainly was no concealment by defendant such that would toll the statute of limitations. *Menominee Tribe,* 726 F.2d at ·721. Nor were the facts of a potential claim "inherently unknowable" at the ordinary accrual date of 1962. *Id.* Plaintiffs are on constructive notice of facts that are not fraudulently concealed or otherwise inherently unknowable, *see id.* at 721, and, in this context, the "statute of limitations applies to Indians the same as anyone else." *Fort Mojave Tribe of Indians v. United States,* 546 F.2d 429, 210 Ct.Cl. 727, 728 (1976). Under the circumstances presented here, the court cannot find that plaintiffs required twenty-eight years to discover that their royalties were not valued on the basis of major portion analysis. Requiring plaintiff Indians to seek an explanation of royalty valuation procedures within a six-year period does not place too great a burden on them.

Defendant cited the relevant regulatory and statutory scheme enacted during the 1970's and urged the court to hold that plaintiffs' claims "first accrued" by 1978 at the latest.[1] However, the court need not belabor this issue as it finds that plaintiffs were on constructive notice, and should

have known of the terms of the leases executed by their predecessors in interest. Therefore, plaintiffs' claim that defendant's failure to collect royalties valued by performance of major portion analysis first accrued in 1962, and is barred by operation of the statute of limitations unless an applicable exception tolled its running.

C. The Continuing Claim Doctrine Does Not Toll The Statute Of Limitations.

■ Plaintiffs sought application of the "continuing claim" doctrine if the court found their claim barred by operation of the statute of limitations. *See Mitchell v. United States,* 10 Cl.Ct. 63, *modified on rehearing,* 10 Cl.Ct. 787 (1986). In *Mitchell,* this court held that where there exists a continuing duty, a new cause of action arises each time the government breaches that duty. *Id.* at 788. Thus, the continuing claim doctrine would allow a plaintiff to sue upon those causes of action that arose within the six-year limitations period. *Id.*

In the instant case, plaintiffs argued that defendant continuously failed to perform major portion analysis, and that each month's royalty payment constituted a new and separate claim. Plaintiffs asserted that the continuing claim doctrine has been "universally recognized in state and federal jurisdictions." However, this court no longer recognizes the continuing claim doctrine. *See Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990). In *Hart,* this court allowed the widow of a federal employee to bring suit for annuity benefits under the Survivor Benefit Plan more than six years after the death of her husband. The Claims Court applied the continuing claim doctrine and agreed with plaintiff that a new claim arose each month for the annuity payment. The United States Court of Appeals for the Federal Circuit disagreed, noting that the result of plaintiff's theory would be that the statute of limitations would never run with respect to the six years of annuity payments preceding the filing of the suit, and thereafter. *Id.* at

---

**1.** NTL–5 and the NGPA both were in effect by the end of 1977. Defendant urged the court to find that these constituted a public record suffi-

cient to charge plaintiffs with notice of their claim and commence the running of the statute of limitations.

818. This result would be contrary to the statute of limitations' purpose; limiting the opportunity to file suits, as well as the obligation to defend against them. *Id.* Therefore, the Federal Circuit held that the claim first accrued when all events occurred "which fixed the liability of the government and entitle[d] the claimant to institute an action," *id.* at 817 (citing *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988)), and did not reaccrue each time the event subsequently occurred. In the instant action, assuming a breach by defendant, plaintiffs first were entitled to bring an action in 1962, on the day they received their first royalty payment.

In the Claims Court, the statute of limitations constitutes an express limitation on Congress' consent to suit under the Tucker Act, 28 U.S.C. § 1491 (1982). It is the responsibility of this court to construe strictly the conditions attached to the waiver of sovereign immunity. *Block v. North Dakota ex rel. Bd. of Univ. & School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). The court cannot graft judge-made exceptions to 28 U.S.C. § 2501 that would allow a plaintiff to assert a claim beyond the six-year limit. *Hart,* 910 F.2d at 819. *Hart* emphasized the two-fold public interest served by the statute of limitations: It protects the government from having to defend issues grown stale long after the occurrence of the events sued upon, and ends the possibility of litigation after a reasonable time. 910 F.2d at 818 (citations omitted). Any claimant with a claim against the government, including a Native American, must file suit in as timely a manner as the government must file its claims against its citizens. *Id.* The longer a plaintiff waits to assert a claim for deficiently calculated royalties, the more difficult it becomes for the government properly to defend the public fisc. The government need not "keep its courts open indefinitely for one who neglects or refuses to apply for redress until it may fairly be presumed that the means by which the other party might disprove his claim are lost in the lapse of time." *Wilson v. Iseminger,* 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902).

Congress may extend the statute of limitations for bringing a claim against the government if it so chooses, however, the courts may not. Therefore, the continuing claim doctrine cannot toll the statute of limitations governing plaintiffs' claim.

## II. *Fiduciary Duties*

A. Plaintiffs' Assertion That Defendant's Failure To Exercise Royalty In Kind Provisions Constitutes A Breach Of Fiduciary Duty Fails To State A Proper Claim.

■ Plaintiffs' second claim alleged that they sustained financial injury because of defendant's failure to exercise the lease provisions allowing the lessors to receive royalties in kind. The relevant provision permitted the lessor to take royalties in kind upon giving thirty days' written notice to the lessee. Plaintiffs asserted that defendant "stepped into their shoes" in every aspect of the leasing process and so assumed the status of lessor, but failed to allege a single instance when exercise of the royalty in kind option would have benefitted them economically. Plaintiffs' second claim, however, fails for a different reason. In order to state a claim within the court's jurisdiction, plaintiffs must identify a particular statute or regulation imposing a duty on defendant, and a right to money damages for breach of that duty. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Plaintiffs have cited no statute or regulation imposing a duty on defendant to exercise plaintiffs' rights to royalties in kind. Examination of 25 C.F.R. § 212.16, dealing with rentals and royalties for oil and gas leases, supports this finding. Within the regulation, a clear linguistic distinction is made between the "Secretary of the Interior" and the "lessor." Section 212.16 specifically discusses the exercise of the royalty in kind provision by the *lessor.* This directly contrasts with the Secretary's duty to approve oil and gas leases, and his discretionary authority to set the royalty rates to be paid by the lessee for the lessor's benefit. Thus, the royalty in kind provisions in the leases contemplate that

plaintiffs must play an active, if not exclusive, decision-making role. Plaintiffs' argument that defendant "stepped into [their] shoes" does not convince the court that defendant had any duty to exercise the royalty in kind provision.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment. The Clerk of the court is directed to enter judgment accordingly.

IT IS SO ORDERED.