947 F.2d 955
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 William URABAZO, Plaintiff-Appellant,
v.
UNITED STATES of America, The DEPARTMENT OF the INTERIOR;
Manuel Lujan, Secretary of the Interior; Bureau of Indian
Affairs; William P. Ragsdale, Acting Assistant Secretary of
Indian Affairs; Walter Mills, Director, Anadarko Area
Office; Clem E. Clearly, Superintendent, Anadarko Agency,
in their capacity as federal officials, Defendants-Appellees.
 No. 91-6028.
 United States Court of Appeals, Tenth Circuit.
 Oct.21, 1991.
 
 1
 Before McKAY, Chief Judge, EBEL, Circuit Judge, and SAFFELS,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DALE E. SAFFELS, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Plaintiff appeals the district court's order of November 8, 1990, entering summary judgment in favor of defendants on plaintiff's claims for declaratory relief. Plaintiff alleged in his complaint that his great-grandmother, Susie Araspar, and his grandfather, Adolphus Araspar, were adopted into the Wichita and Affiliated Band of Indians in 1901. Plaintiff further alleged that certain decisions the Bureau of Indian Affairs (BIA) allegedly made in the early 1970s caused the Wichita Tribe to disenroll him. Plaintiff, therefore, sought a declaration of the following: (1) that the BIA is not authorized to make independent determinations of Indian blood quantum; (2) that the "BIA exercised its purported authority to make the decision affecting Plaintiff's enrollment with the Wichita Indian Tribe by improper and illegal application of 25 C.F.R. Part 62;" and (3) that "the BIA's determination of Plaintiff's [Indian] blood quantum for any purpose is void ab initio." Appellant's App., Doc. 1 at 6. The district court granted the government's motion for summary judgment on the ground that plaintiff's claims were barred by the statute of limitations set forth in 28 U.S.C. § 2401(a). We agree that plaintiff's claims were untimely.
 
 
 6
 Section 2401(a) provides in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The limitations period applies to equitable, as well as legal, claims, Christensen v. United States, 755 F.2d 705, 708 (9th Cir.1985), cert. denied, 476 U.S. 1181 (1986), and it applies to Indians in the same manner as other litigants, Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir.), cert. denied, 111 S.Ct. 75 (1990); see also Menominee Tribe of Indians v. United States, 726 F.2d 718, 722 (Fed.Cir.1980) (statute of limitations in 28 U.S.C. § 2501). Furthermore, because plaintiff named the individual defendants in their official capacities, we treat his claims against them as claims against the United States; see Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), and apply section 2401(a) to plaintiff's claims against all of the defendants.
 
 
 7
 "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." Spannaus v. United States Dep't of Justice, 824 F.2d 52, 55 (D.C.Cir.1987). "The plaintiff's failure to sue within the period of limitations is not simply a waivable defense; it deprives the court of jurisdiction to entertain the action." Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d at 592; see also Vincent Murphy Chevrolet Co. v. United States, 766 F.2d 449, 452 (10th Cir.1985).
 
 
 8
 Although the government should have brought its challenge to the court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) rather than Rule 56, "[t]his procedural obstacle is inconsequential ... because we review a district court's decision under both rules de novo." Zumwalt v. United States, 928 F.2d 951, 952 (10th Cir.1991).
 
 
 9
 A cause of action "first accrues" for purposes of 28 U.S.C. § 2401(a) " 'when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action.' " United States v. Sams, 521 F.2d 421, 429 (3d Cir.1975) (quoting Japanese War Notes Claimants Ass'n of Phil., Inc. v. United States, 373 F.2d 356, 358 (Ct.Cl.), cert. denied, 389 U.S. 971 (1967)); see also Impro Prods., Inc. v. Block, 722 F.2d 845, 850 (D.C.Cir.1983) (cause of action first accrues for purposes of section 2401(a) "when the 'right to resort to federal court [is] perfected' " (quoting Oppenheim v. Campbell, 571 F.2d 660, 662 (D.C.Cir.1978))), cert. denied, 469 U.S. 931 (1984).
 
 
 10
 Plaintiff does not dispute that section 2401(a) applies to his claim, and he admitted in his response to defendants' motion for summary judgment that "he has known about this claim since 1972 or thereabouts." Appellant's App., Doc. 17 at 5-6. Nonetheless, plaintiff argues that his claim should not be barred by section 2401(a) because defendants' actions tolled the commencement of the limitations period.
 
 
 11
 The record shows that plaintiff's membership in the Wichita Tribe was called into question in the early 1970s. At that time, plaintiff applied for educational benefits from the BIA as a member of the Wichita Tribe. His mother, Lucy Urabazo, also wrote the BIA in January of 1972 seeking a statement that she was enrolled with the Wichita Tribe and asking if there were some question as to whether she and her family were enrolled illegally.
 
 
 12
 The BIA responded to Mrs. Urabazo's letter on January 18, 1972. It informed her that BIA records showed her father, Adolphus Araspar, was an allottee of the Caddo Tribe.[1]
 
 The BIA's letter also stated:
 
 13
 Although the names of many members of the Araspar family have appeared on membership lists of the Wichita Tribe through the years, that tribe does not have an official membership roll. The Wichita Executive Committee has recently begun preparation of such a roll under the provisions of the governing document....
 
 
 14
 Since your father was a Caddo allottee, not a Wichita allottee, it would appear that you would not be eligible for membership under the criteria quoted above [from the governing document]. However, decisions concerning tribal membership are the prerogative of the tribe rather than the Bureau of Indian Affairs. The Wichita Tribe is currently considering possible changes in the membership criteria, but no final action has been taken yet.
 
 
 15
 Appellant's App., Doc. 17, Ex. 14 at 1.
 
 
 16
 The BIA also sent plaintiff a letter on January 25, 1972, denying his request for educational benefits on the ground that he was not a member of the Wichita Tribe. Enclosed with the letter was a copy of a memo written on March 30, 1971, from the Commissioner of Indian Affairs to the BIA Director for the Anadarko Area. The memo was in response to the Anadarko Agency Superintendent's request "for clarification of the authority of the Superintendent in determining the eligibility of applicants for Bureau services who possess the blood of tribes for which he has no record." Brief for Federal Appellees, Ex. 12 at 1. The memo states in pertinent part as follows:
 
 
 17
 In the specific case of the descendants of Nicholas and Susie Arispi (Araspar), the records on file at the National Archives indicate that Susie was the daughter of Mexican parents who were killed and she was raised by the Wichita Indians and considered one of them. Her husband is listed in the family register as 7/8 degree Mexican and 1/8 degree Pueblo. Their children, therefore, could only be shown as 1/16 degree Indian blood. Susie's son, Adolph Arispi, however, possessed no Indian blood.
 
 
 18
 The situation of the descendents of Nicholas and Susie Arispi is different from that of descendants of Kiowa and Commanche captives who do not possess Indian blood yet who might be considered as full blood members of either tribe by reason of having been allotted with those tribes. The blood degree of the descendants of captives is determined in accordance with the Kiowa and Commanche constitutions.
 
 
 19
 Id. at 2. Thereafter, plaintiff wrote the BIA concerning the denial of his request for benefits.
 
 
 20
 In 1973, the Wichita Tribe prepared an updated membership roll that did not include plaintiff or his mother. The BIA sent plaintiff's mother a letter in August of that year in response to her earlier letters concerning problems with gaining membership in either the Wichita or Caddo Tribes.[2]
 
 
 21
 The BIA's letter reiterated that Adolphus Araspar was adopted into the Caddo Tribe, but acknowledged that members of the Urabazo family had been listed on the census rolls as members of the Wichita Tribe for many years. The letter further stated, however, that "during the preparation of the tribal roll by the Wichita Executive Committee it was discovered that your father was a Caddo allottee and that members of your family could not meet the eligibility requirements specified in the Wichita resolution governing membership." Id., Ex. 18 at 1-2. The letter discussed the Urabazos' failed attempts to gain membership in the Caddo Tribe, and concluded:
 
 
 22
 It is unfortunate that members of your family cannot meet the requirements for membership of either the Caddo or Wichita Tribes. However, there is nothing we can do to assist you in this matter since membership in Indian tribes is a tribal matter. Only when authorized by the tribal constitution or other organizational document or in matters involving the disposition of the tribal estate can the Bureau involve itself in matters concerning enrollment as a member of the tribe.
 
 
 23
 Id. at 2-3. The BIA forwarded a copy of this letter to the Wichita Tribe.
 
 
 24
 The record indicates that plaintiff was aware of the contents of the correspondence between his mother and the BIA. Therefore, he knew as early as 1973 that the BIA's records showed his grandfather was a Caddo, not a Wichita, allottee; that the BIA was of the opinion that plaintiff's family did not meet the qualifications for membership in either the Caddo or Wichita Tribes; that the Wichita Tribe had struck him from its membership roll; and that the BIA would do nothing further to assist plaintiff's family in securing membership in either tribe. Nonetheless, plaintiff argues that the limitations period on his claims for declaratory relief from the BIA's purported decisions about plaintiff's Indian blood quantum and his eligibility for tribal membership did not begin to run in 1973.
 
 
 25
 The circumstances upon which plaintiff relies in arguing that the commencement of the limitations period was tolled are as follows: (1) the BIA had no jurisdiction to make independent determinations of Indian blood quantum; (2) a reasonable person in plaintiff's position would not know "with a reasonable degree of certainty the kind of injury he suffered and the party or parties responsible for causing the injury or harm," Brief of Plaintiff-Appellant at 11; and (3) "the BIA led Appellant Urabazo into a well-founded belief that he could not address his problem to it and that his only legal recourse was within the tribal forums," Reply Brief of Plaintiff-Appellant at 7.
 
 
 26
 The gist of plaintiff's first argument is simply that he has a meritorious claim. Even a meritorious claim, however, must be filed within the limitations period. See Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d at 591.
 
 
 27
 Plaintiff's second and third arguments are related. Plaintiff contends that because the BIA admitted during the district court action that it had no jurisdiction to make any independent determinations of Indian blood quantum yet continued to deny that it did anything wrong--the BIA contended that it merely relied on tribal decisions about plaintiff's tribal membership--plaintiff did not know he had been injured or who had caused his injury. Plaintiff also argues that because the BIA said it could do nothing for him and that tribal membership was a tribal matter, the BIA effectively "shut the door in his face ... [and] no exit out of the tribal back to the federal forum was possible," Reply Brief of Plaintiff-Appellant at 8. We are not persuaded by plaintiff's arguments.
 
 
 28
 Federal courts have tolled the commencement of a limitations period on a claim against the United States in two circumstances: (1) when the United States concealed its wrongdoing so the plaintiff did not know and in the exercise of due diligence could not learn of his injury; and (2) when the plaintiff's injury was "inherently unknowable." See Menominee Tribe of Indians v. United States, 726 F.2d at 721; United States v. Sams, 521 F.2d at 429-30.
 
 
 29
 The record does not reflect that the BIA concealed its alleged wrongdoing from plaintiff. The BIA's letter clearly expressed both the BIA's opinion as to plaintiff's qualification for tribal membership and the basis for that opinion. That the BIA denied it committed any wrongdoing in expressing its opinion does not constitute "concealment" so as to toll the commencement of the limitations period. See Peck v. United States, 470 F.Supp. 1003, 1019 (S.D.N.Y.1979) ("[A] denial of an accusation of wrongdoing does not constitute concealment."). Likewise, the injury plaintiff allegedly suffered as a result of the BIA's actions was not "inherently unknowable." To the contrary, plaintiff knew of his injury when the Wichita Tribe excluded him from its membership roll in 1973.
 
 
 30
 Furthermore, although the BIA may have closed the door on any further informal administrative relief, it did not foreclose all federal remedies. Plaintiff could have brought the present declaratory action against the BIA in 1973, or at least within six years thereafter, just as easily as he brought it in 1989. Plaintiff has not pointed to any facts that changed or came to light between 1979, when the limitations period ended, and 1989 that affected his ability to bring suit against the BIA for its alleged wrongdoing. Even if plaintiff were ignorant of his legal right to sue the BIA before 1979, such ignorance would not toll the commencement of the limitations period. Menominee Tribe of Indians v. United States, 726 F.2d at 720-21.
 
 
 31
 The district court correctly ruled that plaintiff's action was barred by the six-year limitations period set forth in 28 U.S.C. § 2401(a). The court, however, should have dismissed the action for lack of jurisdiction rather than entering judgment in favor of defendants and against plaintiff.
 
 
 32
 Therefore, the judgment of the United States District Court for the Western District of Oklahoma is MODIFIED to reflect a dismissal for lack of subject matter jurisdiction.
 
 
 
 *
 Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Both the Wichita and the Caddo Tribes were once part of the Wichita and Affiliated Band of Indians
 
 
 [2]
 After the BIA informed plaintiff's mother that its records showed her father was a Caddo allottee, plaintiff and other members of his family sought membership in the Caddo Tribe. The Tribe denied their requests