Indian claims; pleading and practice; relation back of amendment; limitation of actions; plea of loss of tax exemption by legislative act — On March 21, 1980 the court entered the following order:
Glen R. Goodsell, with whom was Assistant Attorney General James W. Moorman, for defendant.
Before Davis, Judge, Presiding, and Nichols , Judge.
Defendant’s motion for summary judgment calls on us to decide but a single issue, whether our 6-year statute of limitations, 28 U.S.C. §2501, bars the Menominee’s claim for exposure of themselves, their tribe, and their enterprises to Federal and State taxation by termination of their previous exemption.
This grievance is first pleaded in the amended petition filed February 20, 1975. The 1975 pleader relies wholly on the congressional enactment, Section 9 of the Menominee Termination Act, 28 U.S.C. §899, as the Act for which defendant should be held liable, and he pleads alternatively a breach of fiduciary duty by the Congress, and a fifth amendment taking of property without payment of just compensation. The former theory is now out of court by reason of our decision, Menominee Tribe of Indians v. United States, 221 Ct. Cl. 506, 607 F.2d 1335 (1979), cert. denied, 445 U.S. 950 (1980), which holds that Congress has not consented to suit in this court based on alleged breaches of trust in enactments by Congress itself in its management of Indian affairs. This decision refers, however, to the instant claim as one of those into which the original single Menominee petition was severed in 1973. We specify that we address only nonconstitutional breach of trust claims, and leave open constitutional taking claims, which come under our Tucker Act and 28 U.S.C. § 1505 jurisdiction as founded on the Constitution. The instant claim can, therefore, now be prosecuted only on the taking theory, and our analysis of the motion must focus on when the plaintiffs first pleaded the loss of tax exemption as a grievance, and when they first alleged that their taking theory was applicable to this grievance.
It is undisputed that the Menominee Termination Act became effective April 30, 1961, and that this was the date the cause of action, if any, accrued. The plaintiffs filed their original petition April 25, 1967. As of that date, they had 5 *664 days left to notify defendant of their tax exemption claim, unless that petition did so. There is no record of anything relevant said or done in those 5 days. Plaintiffs refer us to pretrial proceedings in 1970 and 1971, which, without opposition by defendant, dealt with the tax exemption claim under the fifth amendment as an active issue in the case, but these records say nothing about how long defendant had known of it. The formal amendment to state this claim was not until 1975, though clearly called for by the 1973 severance. Such is the way time passes in Indian claims litigation. We turn, therefore, to the original petition as the only document in the record that could reflect a timely notification to defendant that it must deal with, among others, the tax exemption claim. In this regard, defendant relies a little on the statement in fn. 2 of our 1979 Menominee decision, that the tax exemption claim was "added” after the original petition, but this was not written for the purpose of passing on the limitations issue, and is cited here out of context. We place no weight upon it.
The 1967 petition clearly sets forth in numbered paragraphs 6-14, nine specific wrongs, e.g., 6. Menominee Forest-Restrictions, 7. Menominee Forest-Management, 8. Menominee Mill. All are specific problem areas in which defendant, according to the pleader, did the plaintiffs harm. Some, e.g., 10. Power Line Right of Way deal with mismanagement before the termination date. In others, the Termination Act itself is the culprit, e.g., 13. Termination Expenses. Tax exemption is never mentioned. The pleader nowhere adds a catchall or basket clause to include other wrongs, if any. He repeatedly refers to negligence and breaches of trust. At the end of the petition, he adds:
wherefore, plaintiffs pray that judgment be entered against the defendant in an amount which will provide just compensation under the Fifth Amendment to the Constitution and other applicable laws, including damages for delay in payment, for plaintiffs’ property and interests in property taken or disposed of by the defendant; and for damages incurred by plaintiffs due to defendant’s negligence hereinabove set out and for defendant’s mismanagement of plaintiffs’ funds and property, and for such other and further relief as to the Court may appear just and equitable.
*665 This can only be read as referring to the nine specific wrongs, and suggesting alternative legal theories under which damages might be assessed.
The original petition appears to set forth nine claims with no nexus except the identity of the plaintiffs and defendant. There was no common legal theory: claims might be proven as breach of trust or taking or negligence. Under some claims the major culprit was the Termination Act. Under others, it was negligence or mismanagement prior to the Act, impairing, perhaps, the value of the tribal property as turned over to tribal control on April 30, 1961. There is thus no grouping of claims that might be read as including claims not mentioned on some kind of noscitur a sociis theory. There is nothing that can fairly be read as a basket clause. The pleader does not seem to have entertained the idea that came into the case later, that every loss the Menominees suffered after 1961 might be imputed to breach of trust in enactment of the Termination Act. Defendant’s interpretation of the petition in 1970-71 might validate a construction of it that included the tax exemption claim, if the petition embodied any ambiguous language that could arguably have been meant to include that claim. It does not. Plaintiffs do not cite a single clause of the original petition except the WHEREFORE clause we have already quoted.
Plaintiffs rely on our Rule 39(c) which says that amendments to pleadings relate back when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading * * *.” As construed in Vann v. United States, 190 Ct. Cl. 546, 420 F.2d 968 (1970), some reference in the original pleading, however hazy, to the conduct later complained of is required, but Section 9 of the Termination Act, the specific grievance of the 1975 amended petition, is never mentioned in the original petition. None of the grievances mentioned in the original petition apparently rise out of Section 9, which section, following distribution of assets to the Indians, made them, and income derived therefrom, subject to State and Federal taxes the same as non-Indians’ property and income.
*666 Plaintiffs do not cite Rule 39(b) by which, when issues not raised by the pleadings are actually tried by express or implied consent of the parties, they shall be treated in all respects as if initially pleaded. We assume they concluded that entitlement to recover on the tax exemption claim would be a question of law, not requiring trial. The conclusion we reach does not require us to consider, and we do not decide, whether the termination of a tax exemption is or can ever be a taking within the meaning of the fifth amendment.
Accordingly, upon review of the briefs and record, but without oral argument, defendant’s motion for summary judgment is granted and the petition is dismissed.
April 25, 1980