## MENOMINEE INDIAN TRIBE OF WISCONSIN, Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 93–649X.

United States Court of Federal Claims.

Aug. 11, 1998.

Charles A. Hobbs, with whom were Jerry C. Straus, Frances L. Horn, Marsha Kostura Schmidt, and Joseph H. Webster, all of Washington, D.C., for plaintiff.

James Brookshire, with whom was Glen R. Goodsell, U.S. Department of Justice, General Litigation Section, Environment & Natural Resources Division, Washington, D.C., for defendant.

### ORDER

ERIC G. BRUGGINK, Hearing Officer.

On August 6, 1993, Senate Resolution 137 referred to the Court of Federal Claims a proposed bill, S. 1335, for the relief of the Menominee Indian Tribe of Wisconsin, and requested the Chief Judge to proceed in accordance with the provisions of 28 U.S.C. §§ 1492 and 2509 regarding congressional references. The Resolution requested that the court

> report back to the Senate … providing such findings of fact and conclusions that are sufficient to inform the Congress of the nature, extent, and character of the damages referred to in such bill as a legal or equitable claim against the United States or a gratuity, and the amount, if any, legally or equitably due from the United States to the Menominee Indian Tribe of Wisconsin by reason of such damages.

The proposed bill if enacted would authorize the payment, "out of any money in the Treasury of the United States not otherwise appropriated," of "a sum equal to the damages sustained by the Menominee Tribe of Wisconsin by reason of (a) the enactment and implementation of the Act of June 17, 1954 (68 Stat. 250), as amended, and (b) the mismanagement by the United States of the Menominee assets held in trust by the United States prior to April 30, 1961, the effective date of Termination of Federal supervision of the Menominee Indian Tribe of Wisconsin."

The Menominee Tribe filed with this court a complaint alleging injury and damages that arose from the enactment and implementation of the Menominee Termination Act, as well as for various acts of mismanagement by the Bureau of Indian Affairs (BIA) during the period prior to Termination, 1951–1961. Specific claims alleged were: Count (I) Congressional Breach of Trust ("Basic" claim); (II) Forest Mismanagement; (III) Mill Mismanagement; (IV) Loss of Tax Exemption; (V) Loss of Hospital; (VI) Highway Rights–of–Way; (VII) Power Lines; (VIII) Public Water and Sewage Systems; (IX) Mismanagement of Tribal Funds (Accounting); (X) Loss of Government Programs; (XI) Imposition of Bond Debt; and (XII) Loss of Tribal Property.

This case has a long history before this court. Many of the claims at issue in this congressional reference were litigated previously before the U.S. Court of Claims in the case of *Menominee Tribe of Indians v. United States*, Nos. 134–67–A through –I, originally filed in April 1967. The case concerned breach of trust and taking claims related to the Termination of the Menominee Tribe and certain claims for mismanagement of tribal assets during the period prior to Termination (1951–1961). It has been the subject of seven trial court decisions and four decisions before the appellate court. *Menominee Tribe v. United States*, 221 Ct.Cl. 506, 607 F.2d 1335 (1979) (congressional breach of trust or "Basic" claim); *Menominee Tribe v. United States*, 223 Ct.Cl. 662, 1980 WL 99728 (1980) (tax exemption statute of limitations); *Menominee Tribe v. United States*, 726 F.2d

712 (Fed.Cir.1983) (deed restrictions); *Menominee Tribe v. United States*, 726 F.2d 718 (Fed.Cir.1984) (forest mismanagement). All of the dockets were ultimately dismissed in 1984, seventeen years after they were filed, on statute-of-limitations and jurisdictional grounds.

Relying on the substantial record developed in that earlier case as well as on substantial supplemental evidence in the current case, the parties in the present congressional reference filed briefs with the court on the issue of liability as to the first three counts of the Tribe's complaint, as well as on the issue of whether there was good cause for removing the bar of the statute of limitations. In an opinion dated October 30, 1997, this hearing officer held that the claims for Congressional Breach of Trust and Forest Mismanagement were not equitable claims for which damages could be recommended; rather, payment of damages for these claims would constitute a gratuity. *See Menominee Indian Tribe v. United States*, 39 Fed.Cl. 441, 460–62 (1997). This hearing officer held as to the Mill Mismanagement claim that the issues presented were grounded in equity, but reserved to a later time a decision on the merits and damages, if any, as to each of the particular acts of mill mismanagement alleged by the Tribe. *See id.* at 471. Finally, the hearing officer held that there was good cause to remove the bar of the statute of limitations, which had barred some of the claims in the earlier case. *See id.* The Tribe has stated in the stipulation filed by the parties its disagreement with the hearing officer's holdings on the merits of Count I and II and its intention, if the case were not settled, to appeal the ruling to the review panel. The United States has reserved the right to challenge the hearing officer's good-cause ruling.

After those decisions were rendered, the parties entered into settlement discussions and on August 11, 1998, the parties filed with the hearing officer for approval a stipulated settlement agreement, attached hereto, asking the hearing officer to report to Congress that it has approved the stipulation and recommends that Congress adopt it.

The parties have stipulated that the reference overall includes proper equitable claims appropriate for settlement, and though each side contests certain aspects of the case and aspects of the decisions rendered by this hearing officer, the parties have agreed that the case overall is appropriate for compromise and settlement.

The stipulation of the parties, attached hereto, details the claims and the damage award sought by the Tribe in this reference for the twelve claims. The Tribe claims a total value of $141 million on all of its claims. Although the government does not concur in the Tribe's assessment of the individual claims, it has negotiated terms of a settlement with the Tribe that the parties believe to be fair, just, and equitable. Although the parties did not agree on a settlement value to each claim in the case, the parties have stipulated, in compromise and settlement of the reference overall, that the Menominee Tribe should be compensated in the amount of $32,052,547 in total for its claims as a whole.

In issuing its opinion in 1997 with respect to the first three counts, this hearing officer read all the findings and conclusions of the prior litigation, as well as the appellate opinions. In addition the hearing officer read all the expert reports, irrespective of whether they were directed solely to issues raised in the first three counts, and reviewed virtually all the remaining documentary and testimonial evidence. Because the settlement agreement encompasses not only the three claims that were the subject of the prior opinion, however, but also the remaining claims that have not yet been heard on the merits in the present case, as well as other claims that could have been alleged in the reference, the hearing officer considered additional documentary evidence and citations to the record as well as other information to satisfy himself that the reference overall includes claims equitable in nature. This evidence includes documentary exhibits and an expert report bearing on the Tribe's claim for mismanagement of funds. The government reviewed this evidence as well and provided to the hearing officer its position as to the claims.

Upon careful review of the evidence and consideration of the legal issues, and without

withdrawing my 1997 opinion, I am satisfied that the reference overall includes substantial equitable claims appropriate for settlement. I have reviewed the evidence in support of the remaining nine counts, as well as the evidence supporting the damages assertions, and believe that there is ample basis in the record to support a settlement on the grounds that these counts embrace equitable claims that could be the subject of an affirmative recommendation by the hearing officer. I also am satisfied that the amount of the settlement proposed is in line with my assessment of a potential recovery, particularly when recognizing that the tribe does not concede the correctness of the 1997 opinion with respect to counts I and II. Further, while recognizing that the United States disagrees, I conclude that, based on my prior good-cause ruling in this matter, there is a proper basis to find that the bar of the statute of limitations, to the extent applicable, should be removed.

Based on the facts presented in the stipulation, and the evidence that the hearing officer has independently reviewed after consideration of the legal issues, the hearing officer hereby reports that:

a. The reference overall states equitable claims against the United States as set forth in the bill referred to this court.

b. The amount agreed by the parties to be equitably due the Menominee Indian Tribe in full settlement of the aforesaid equitable claims, namely $32,052,547, appears fair and reasonable to the hearing officer, and the hearing officer recommends that Congress appropriate this amount to the Tribe.

c. There is good cause to remove the bar of the statute of limitations to the extent it applies to any of the claims.

d. The parties have stipulated that they waive the right they would otherwise have under RCFC appendix D, paragraph nine, to a thirty-day period in which to accept or reject this recommendation. They have stipulated to its acceptability. They have also stipulated, in the event that the review panel accepts this recommendation, to waive the right to reconsideration under RCFC appendix D, paragraph eleven.

ATTACHMENT

CONGRESSIONAL REFERENCE
TO THE
UNITED STATES COURT OF FEDERAL
CLAIMS

Menominee Indian Tribe of
Wisconsin, Plaintiff,

v.

United States of America, Defendant.

Congressional Reference

No. 93–649X

Judge Bruggink

*Stipulation For Recommendation
of Settlement*

1. On August 6, 1993, the Senate enacted Resolution 137 which referred to this court a proposed bill, S. 1335, for the relief of the Menominee Indian Tribe of Wisconsin, and requested the Chief Judge to proceed in accordance with the provisions of 28 U.S.C. §§ 1492 and 2509 regarding Congressional References. The Resolution requested that the court "report back to the Senate ... providing such findings of fact and conclusions that are sufficient to inform the Congress of the nature, extent, and character of the damages referred to in such bill as a legal or equitable claim against the United States or a gratuity, and the amount, if any, legally or equitably due from the United States to the Menominee Indian Tribe of Wisconsin by reason of such damages."

2. The proposed bill, S. 1335, sets forth the claims Congress requested the Court to consider as follows:

"Section 1. The Secretary of the Treasury is authorized and directed to pay to the Menominee Indian Tribe of Wisconsin, out of any money in the Treasury of the United States not otherwise appropriated, a sum equal to the damages sustained by the Menominee Indian Tribe of Wisconsin by reason of—

"(a) the enactment and implementation of the Act of June 17, 1954 (68 Stat. 250), as amended, and

"(b) the mismanagement by the United States of the Menominee assets held in trust by the United States prior to April 30, 1961, the effective date of termination of Federal supervision of the Menominee Indian Tribe of Wisconsin.

"Section 2. Payment of the sum referred to in section 1 shall be in full satisfaction of any claims that the Menominee Indian Tribe of Wisconsin may have against the United States with respect to the damages referred to in such section."

3. Many of the claims at issue in this Congressional Reference were litigated previously before the United States Court of Claims in the case of *Menominee Tribe of Indians v. United States,* Dkt. Nos. 134–67 A through I, originally filed in 1967. That case concerned breach of trust and taking claims related to the Termination of the Menominee Tribe and certain claims for mismanagement of tribal assets prior to Termination. It was the subject of seven trial court decisions and four decisions before the appellate court. All of the dockets were ultimately dismissed in 1984, seventeen years after they were filed, on statute of limitations and jurisdictional grounds; none were dismissed on the merits. The Congressional Reference asks this court to make a recommendation under the principles applicable in Congressional Reference cases as to whether the claims are legal or equitable or a gratuity.

4. The Tribe has alleged twelve claims in this Congressional Reference as follows:

(I) *Congressional Breach of Trust*—The Tribe claims that the United States breached its trust duty to the Tribe by enacting and implementing the Termination Act of June 17, 1954, which terminated federal supervision over the Menominee Tribe. The nature of the alleged wrong was that the Tribe was not prepared for Termination and that, though Congress has the power to terminate a Tribe, it cannot without breaching its trust responsibilities terminate the Tribe prematurely or in a manner that would result in

unreasonable harm to the Tribe. The Tribe claims this was the circumstance in 1954 when the Termination Act was enacted and later in 1961 when the Termination Act was implemented. It is alleged that after the Termination Act was implemented, the economy on the reservation collapsed, and tribal members suffered from poverty, serious lack of health care and education, disruption of tribal institutions and customary ways of making a living, causing severe economic and psychological hardship, so that the once thriving Menominee reservation became a pocket of poverty and despair. In the Tribe's view, the loss of tribal status left tribal members disenfranchised and shorn of their tribal identity and culture.

The Tribe's federal trust status was later restored in 1973. In enacting the Restoration Act, 25 U.S.C. § 903, members of the enacting Congress repudiated the policy of Termination as applied to the Menominee as a "mistake", a "failure" and "an experiment that has had tragic and disheartening results." 119 Cong. Rec. 34308 (Oct. 16, 1973) (statements of Rep. Froehlich, Nelson and Kastenmeier). President Nixon also stated that "This policy of forced Termination is wrong...." 6 Pres. Doc. 894 (1970), *reprinted in,* 116 Cong. Rec. S23258–23262 (July 8, 1970).

In the original "Basic" proceeding the trial court held that the United States had breached its trust duties to the Tribe by terminating it. However, on appeal, the Court of Claims held that the court had no jurisdiction to determine if an act of Congress was a wrong subject to judicial remedy. *Menominee Tribe v. United States,* 221 Ct.Cl. 506, 607 F.2d 1335 (1979). Following the reasoning of the Court of Claims, the hearing officer in this Congressional Reference has also held that even though "the decision to end the Government's relationship with the Tribe when it did was a serious mistake of judgment," acts of Congress cannot serve as a source of a wrong even as an equitable claim in a Congressional Reference context.

Whether this conclusion has been, and remains, correct is a subject of contention between the parties. In any event, the Tribe has the right to seek review of this decision

by the Review Panel when it becomes final. The Government agrees with the hearing officer's ruling. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The Tribe's valuation of this claim is $60 million.

(II) *Forest Mismanagement*—This is a claim for breach of trust in the mismanagement of the Menominee Tribe's valuable forest between 1951 and 1961, prior to Termination. The claim springs from the alleged failure of the BIA to seek an amendment to the congressionally imposed but (according to the Tribe) outdated statutory cutting limit which seriously impaired the ability of the agency to properly manage the forest. In the original case the trial court found the BIA had breached its trust duty and awarded damages in the amount of $7.2 million. The decision was overturned when the Federal Circuit ruled the claim was barred by the statute of limitations. *Menominee Tribe v. United States*, 726 F.2d 718 (Fed.Cir.1984).

In the Congressional Reference action, this claim was briefed before the hearing officer, who held that the claim could not be an equitable one because the Tribe was actually challenging an act of Congress. As such the claim was dismissed for reasons similar to those set forth under Count I—i.e., an act of Congress may not constitute a wrong, even for an "equitable" claim. The Tribe strenuously disagrees with that assessment because it believes the wrongdoer was the BIA for not warning Congress of the damage being done by the outmoded cutting limit. The Tribe has the right to review of this decision by the Review Panel when it becomes final. The Government disagrees with the Tribes's legal and factual basis for this claim. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The Tribe's valuation of the Forest claim is $6.6 million.

(III) *Mill Mismanagement*—This claim is for breach of trust in the mismanagement of the Menominee Mill between 1951 and 1961.

In the Tribe's view, the Mill and Forest were the heart of the economy on the Reservation. The claim focuses on the BIA's alleged failure to make repairs and to maintain the Mill, as well as update the equipment to make it efficient and safe. The claim is made up of 13 subclaims which deal with specific acts of mill mismanagement. In the original case, the trial court awarded $5.5 million in damages, but the claim was later dismissed by stipulation based on the Federal Circuit's ruling on statute of limitations in the forest mismanagement case.

In this Congressional Reference, the hearing officer ruled that the claim is an equitable claim but has reserved judgment as to liability and damages on each of the 13 subclaims to a later proceeding. The hearing officer also ruled that there is reason to remove the statute of limitations bar. The Government disputes this and has the right to seek review of both rulings. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The Tribe's valuation of this claim is $5.9 million.

(IV) *Tax Exemption Taking*—This claim alleges the taking of the Tribe's tax exemption with the passage of the Termination Act. The Tribe claims that, at the time of Termination, it held a valuable property right in its tax immunity. According to the Tribe, this immunity from taxes was based on (a) the Tribe's political status as a sovereign entity; (b) the related doctrine that a state has no jurisdiction over a tribe; and (c) the Tribe's treaty-guaranteed right that its land would "be held as Indian lands are held," and hence implied tax exemption. Treaty of 1854, 10 Stat. 1065, Art. 2. The Tribe alleges that this immunity from taxation is a property right protected by the Fifth Amendment. *See Choate v. Trapp*, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941 (1912).

When the Termination Act was passed, it envisioned specifically subjecting the assets and income of the Tribe's successor corporation (Menominee Enterprise, Inc. or MEI) to federal and state taxation. 26 U.S.C. §§ 898, 899. While Congress has the power to take away the Tribe's immunity from tax, the

Tribe contends that immunity is a valuable property right and that the Tribe is constitutionally entitled to just compensation for its taking (*Choate v. Trapp, supra* ).

In the original case the taking claim was subject to trial and briefing but was ultimately dismissed on statute of limitations grounds. *Menominee Tribe v. United States,* 223 Ct.Cl. 662 (1980). The Tribe maintains that, as a taking claim, the claim is an equitable one and that there is a substantial argument that the statute of limitations should be removed. The United States does not concur in the Tribe's assessment of this claim. The hearing officer has not heard this claim. The Tribe's valuation of this claim is $12,675,910 including principal and interest.

(V) *Hospital Breach of Trust*—The Tribe claims that the BIA breached its trust duty in managing tribal funds which were negligently spent by the BIA in remodeling the Tribe's hospital. The Tribe alleges that the BIA was required to ensure that any renovations to the hospital be in the best interest of the Tribe. In the Tribe's view, this necessarily included bringing the hospital up to state standards when the BIA knew that the hospital would become subject to state laws upon Termination. The Tribe alleges that the BIA failed in this duty by spending hundreds of thousands of dollars of tribal money on major renovations to the Tribe's hospital, though it knew that the renovations would be inadequate under State codes to allow the hospital to continue operating after Termination. Further, according to the Tribe, the BIA failed to remedy these problems in the months before Termination despite the BIA's actual knowledge that the hospital could not be licensed due to numerous violations of State codes. Allegedly as a result, the hospital was forced to close and the tribal money spent on renovations was wasted.

The Tribe alleges that such conduct is a clear violation of the BIA's trust duty to manage tribal funds prudently and is a proper basis for an equitable claim. The original court proceeding did not address this claim directly and it was dismissed by stipulation along with the other unadjudicated claims, in the wake of the unfavorable rulings on the

Basic and Forest claims in 1979 and 1984. The Tribe contends that the Court of Claims did however recognize, in dicta, this claim as a potential breach of trust claim. 221 Ct.Cl. 506, 607 F.2d 1335, 1346–47. The hearing officer has not heard this claim. The United States does not concur in the Tribe's assessment of the facts or law underlying this claim. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The Tribe's valuation of this claim is $3,952,-307 including principal and lost interest.

(VI) *Road Right–of–Way Taking*—Under the Treaty of 1854, the United States held, in trust for the Menominee Tribe, fee title to all land within the Menominee Reservation. The State of Wisconsin built two highways and smaller roads throughout the reservation in the early 1920's. As the 1961 Termination date approached, the State requested and the BIA agreed that the roads on the reservation be brought up to State standards and transferred to the State, and to the future Menominee Town and County. On April 26, 1961, the United States transferred by quitclaim deed for $1.00, a right-of-way over the existing road system on the Reservation as well as additional acreage for the widening of the roads as requested by the State. The Secretary allegedly obtained no compensation for the transfer of the easement or the timber located on the additional right-of-way, nor did the Secretary reserve to the Tribe the right to log that timber.

The Tribe claims that this transfer was a taking under the Fifth Amendment. In the original claim, the trial judge found the transfers were a taking but reserved damages to a later date. The claim was subsequently dismissed by stipulation. As a taking claim, the Tribe maintains that the claim constitutes an equitable claim within the context of the Congressional Reference. The United States does not concur in the Tribe's assessment of this claim. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The hearing officer has not heard this claim. The Tribe's valua-

tion of this claim is $1,664,996 including principal and interest.

(VII) *Power Contract and Right-of-Way Breach of Trust*—This claim is properly considered included as one of the subclaims in the Mill Mismanagement (count III) count and damages are included in that total figure.

(VIII) *Water and Sewer Breach of Trust*—This is a claim that BIA failed to ensure that adequate water and sewer facilities were in place on the Reservation between the period 1951 to 1961. In the original claim, the trial judge found the BIA had breached its fiduciary duty to maintain properly and to upgrade these facilities but reserved damages to a later time. The government disagrees with that ruling. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The hearing officer has not yet heard this claim. The Tribe examined the claim in the context of the current case and decided to drop the claim.

(IX) *Mismanagement of Funds Breach of Trust*—This is a breach of trust claim for the improper expenditure of tribal trust funds by the BIA between 1951 and 1961 and the loss of interest on the money removed from the trust funds. The Tribe claims there were four types of improper expenditure, and asserts the following arguments in support of its position:

(1) The BIA used tribal funds to pay for the BIA's own agency administrative expenses. Since administrative expenses are considered to be for the benefit of and therefore the responsibility of the Government, use of tribal funds for these expenses was a breach of the Secretary's trust duty to manage the Tribe's funds as a trustee would. *Sioux Tribe v. United States,* 105 Ct.Cl. 725 [64 F.Supp. 312] (1946). Moreover, by expending these funds, the Tribe lost interest it would otherwise have earned.

(2) Tribal funds were also used to pay for law and order expenses on the reservation. These expenses are also the responsibility of the Government and not the tribe, and are also not allowed. *Blackfeet Tribe v. United States,* 32 Ind. Cl. Comm. 65 (1973); *Red Lake Band v. United States,* 17 Cl.Ct. 362 (1989).

(3) Tribal funds were used for the expenses of the tribal council in administering Termination. Since Termination was for the benefit of the Government, the Government should have borne the expense based on the same principles stated in (1) and (2) above;

(4) Tribal funds were used to pay for tribal health, education, and welfare expenses while the Government routinely paid for these services for other tribes with Government funds. The Tribe alleges that it was a breach of trust to spend the Tribe's money on such expenses particularly when the Tribe's funds were depleted far below the amount necessary for the Tribe to operate its mill and forest profitably before Termination, and to have the necessary capital on hand to make repairs and rehabilitation after Termination.

The total amount of funds the Tribe alleges were imprudently spent in these four claims is $2,553,180. Had those funds remained in the Tribe's trust fund, and had the Secretary invested those funds as required by 25 U.S.C. § 162a, the Tribe alleges that it would have received additional interest. In the Tribe's view, the lost interest is a valid claim. *Cheyenne–Arapaho Tribes v. United States,* 206 Ct.Cl. 340, 512 F.2d 1390 (1975). The Tribe's valuation of lost interest to date is $27,388,973. Its total valuation on the accounting claim is therefore $29,942,153. The Tribe maintains that the claim for improper expenditures would be an equitable claim within the context of a reference. The government disagrees with the Tribe's assessment of this claim. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The hearing officer has not heard this claim.

(X) *Loss of Government Programs*—The Tribe considers that the damages of this claim are properly included within the dam-

ages of Count I. No separate claim is stated herein.

(XI) *Imposition of Bond Debt*—As part of the Termination Plan approved by the Secretary of the Interior, each tribal member received an income bond at $3,000 face value bearing four percent interest. The Tribe argues that, while normally bonds are issued in return for financial capital, in MEI's case a debt was incurred but it received no corresponding funds or assets. Furthermore, the Tribe argues that there was no practical way for MEI to avoid paying the interest on the bonds even when it did not have the funds to do so. The Tribe argues that, although tribal revenues had been sufficient to make stumpage payments to tribal members before Termination, the Secretary knew that MEI would become subject to a massive tax burden, as well as other new expenses after Termination, and that the Secretary also knew, or should have known, that the imposition of such a massive debt burden in addition to these other expenses would undermine the viability of MEI and cause great hardship to the Menominee.

The Tribe argues that the Secretary was required to ensure that the provisions of the Termination Plan which he approved were in the best interest of the Tribe and its members. *See Cheyenne–Arapaho Tribes v. United States*, 206 Ct.Cl. 340, 512 F.2d 1390, 1396 (1975) (BIA required to make "an independent judgment that the tribe's request was in its own best interest"); *Oglala Sioux Tribe v. United States*, 21 Cl.Ct. 176, 193 (Cl.Ct.1990) (BIA not permitted to place responsibility for poor decisions on Tribe, since tribal decisions subject to final BIA approval).

For these reasons, the Tribe argues, the Secretary breached his duty to the Menominee Tribe by approving the bond provisions of the Termination Plan. If the Secretary breached his trust duty to the Tribe as alleged, it would, in the Tribe's view, be the proper basis for a equitable claim. The hearing officer has not heard this claim. The United States disputes the legal and factual bases for this claim. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims. The Tribe's valuation of this claim is $20,574,000.

(XII) *Taking of Tribal Property*—Upon Termination, the tribal office building was transferred to Menominee County by the Secretary of the Interior. The Tribe alleges that The Termination Act, which required the Secretary to approve and put into effect a plan for the management of tribal assets after Termination, contemplated that such transfers of property from control of the Tribe to other entities would take place. The Secretary issued a deed transferring title to the tribal office building to the County. Despite restoration of the Tribe to federal status in 1973, this property was never returned to the Tribe. Further, according to the Tribe, at no time has the Tribe received any compensation for this property taken by the United States, despite the fact that recognized tribal title, including land and buildings, is protected by the Fifth Amendment, and cannot be taken by the Government without just compensation. The United States does not concur in the Tribe's assessment of this claim. Despite their differing positions, the parties nevertheless agree the claim is appropriate for inclusion in an overall compromise and settlement of all the Reference claims.

This claim, then an undefined part of the accounting claim, was not heard in the original case and it has not been heard by the hearing officer in this Congressional Reference. The Tribe's valuation of this claim is $87,688 including principal and interest.

In summary, the Tribe values its 12 claims at $141 million. The United States does not concur in the Tribe's assessment of the claims. However, as mentioned above, both parties agree that the Reference overall is appropriate for settlement.

5. There has been a full and extensive development of the record in the prior adjudication before the Court of Claims as to many of these claims. Further extensive development of the facts occurred before the hearing officer in the present proceeding including the filing of supplemental evidence in the record of additional plaintiff expert re-

ports, affidavits, and depositions. The parties agree that, after over thirty years of dispute, including seventeen years of litigation in the first case and some thirteen more years of seeking and litigating this Congressional Reference, there has been a sufficient development of all of the claims to support a compromise and settlement. Further, while the parties are each confident in their positions, they each recognize that the outcome with respect to each claim, if fully litigated, is not certain.

6. The hearing officer issued a detailed opinion on the first three claims as well as on the issue of whether the statute of limitations should be removed. This opinion prompted the parties to enter into extensive settlement negotiations.

7. The stipulations herein are based upon an exhaustive review of the evidence by the parties and these stipulations are justified and supported by competent evidence.

NOW THEREFORE THE PARTIES STIPULATE AND AGREE,

(a) That the Congress directed the Court through this Reference to determine whether the Menominee Tribe has legal or equitable claims against the United States as a result of "(a) the enactment and implementation of the [Menominee Termination] Act" and "(b) the mismanagement by the United States of the Menominee assets held in trust by the United States prior to April 30, 1961 . . .";

(b) That this Reference overall is a proper one for compromise and settlement, given the extensive development of the legal and factual record that has already occurred in this and prior litigation between the parties, and given the parties' careful consideration and negotiation of the legal and factual issues in this matter;

(c) That, recognizing that the parties reserve their positions on these matters, the legal and factual record developed with respect to the Menominee in this and prior litigation establishes a basis for equitable claims against the United States within the scope of this Reference, including a potential basis for removal of the bar of the statute of limitations;

(d) That it would be fair, just, and equitable, under the terms of the Reference, to pay the Menominee Tribe of Wisconsin the sum of $32,052,547 as a final settlement of all claims that the Tribe has stated in this action, and that that amount is supported by the record in this and prior litigation;

(e) That, as demonstrated by the record in this and prior litigation, and as acknowledged by President Richard Nixon and members of Congress, the policy of forced termination as applied to the Menominee Tribe, was "wrong";

(f) That the hearing officer in this matter, the Review Panel, and the Chief Judge should approve this Stipulation and recommend to Congress the above-stated sum as the appropriate amount to be paid to the Menominee Tribe;

(g) That the compromise and settlement of these claims includes any and all claims which were, or could have been, alleged—either directly or indirectly—pursuant to S.1335, including, but not limited to, claims for attorney's fees and other expenses;

(h) That any and all claims encompassed by S.1335 will, consistent with Paragraph (i), below, be fully and finally resolved upon a recommendation of payment of $32,052,547 as consistent with the overall merit of the claims;

(i) That, upon the tendering of a recommendation by the hearing officer in approving the compromise and settlement of any and all claims encompassed by S.1335 for the amount agreed to by the parties, and the transmission to Congress by the Chief Judge of the Court's Report to the same effect, the Reference under S.1335 to the Court of Federal Claims shall be fully and finally resolved; and

(j) That this compromise and settlement derives from the unique circumstances of the Menominee Tribe with respect to the Act of June 17, 1954, and the Tribe's continuous effort since 1967 to obtain relief, and that this compromise and settlement shall not be cited for, and does not constitute, precedent in any fashion with respect to any other dispute.

534

(k) That, if this stipulation is accepted by the hearing officer, the parties waive their right under RCFC Appendix D ¶ 9 to file within 30 days a notice of acceptance or exception to the hearing officer's report. They herewith accept such a report.

(*l*) That, if the hearing officer accepts this stipulation and so reports to the review panel, and if the review panel adopts the report of the hearing officer, the parties waive the right under Appendix D ¶ 11 to seek rehearing within ten days, and instead request that the matter be promptly filed with the Clerk for transmission by the Chief Judge to Congress.

Stipulated and signed this 11th day of August, 1998.

The Menominee Tribe of Wisconsin

/s/ Charles A. Hobbs

By: Charles A. Hobbs
    Attorney for the
    Plaintiff Menominee Tribe

The United States of America

/s/ James E. Brookshire

By: James E. Brookshire
    United States Department of Justice
    Attorney for the United States